IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| SAMANTHA J. GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:14-cv-01213-STA-dkv |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Samantha J. Gardner filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on March 4, 2013. On March 15, 2013, the ALJ denied the claim. The Appeals Council subsequently denied her request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."¹ The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,² and whether the correct legal standards were applied.³

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."⁴ It is "more than a mere scintilla of evidence, but less than a preponderance."⁵ The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.⁶ When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.⁷

Plaintiff was born on June 27, 1978, and has a high school education. She has past relevant work as a cashier, corrections officer, and secretary. She alleges disability due to degenerative disc disease of the lumbar spine, obesity, gastroesophageal reflux disease, hypertension, and depression beginning July 17, 2009.

---

¹ 42 U.S.C. § 405(g).

² *Id.*

³ *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

⁴ *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

⁵ *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

⁶ *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

⁷ *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through December 31, 2014; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: degenerative disc disease ("DDD") of the lumbar spine with minimal bulging and mild bilateral neural foraminal narrowing without nerve root compression at L4-L5, and small disc bulging with a small amount of facet arthropathy, moderate to severe left neural foraminal narrowing, and likely radiculopathy on the left side at L5-S1 and obesity; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work as evidenced by her ability to sit, stand, and walk for up to six hours within an eight-hour work day when able to alternate sitting and standing as needed, frequently engage in overhead reaching with bilateral upper extremities, handling, fingering, feeling, pushing and pulling, work with left foot controls, climb ramps and stairs, balance, stoop, and crouch; she is never able to climb ladders or scaffolds and should avoid concentrated exposure to pulmonary irritants, temperature extremes, and work hazards; (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the Grids") as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff

3

can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

---

[8] R. 15 – 25.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there is a substantial number of jobs in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that the ALJ erred by failing to include severe nerve root impingement when assessing her severe impairments and by failing to find that her spinal disorder meets or equals a listing under 20 C.F.R. § 404, Subpart P, Appendix I. Additionally, she contends that the ALJ erred in the weighing of the medical opinion evidence in giving more weight to the opinions of the consultative providers than that of her treating physician. Plaintiff's arguments are not persuasive.

Looking at Plaintiff's last argument first, the Court notes that medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[14] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all

---

[13] 20 C.F.R. § 404.1520(a).

[14] 20 C.F.R. § 404.1527(c)(2).

the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[15]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[16] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[17]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[18] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[19] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[20] Opinions from

---

[15] Soc. Sec. Rul. 96–2P.

[16] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[17] Soc. Sec. Rul. 96–2P.

[18] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[19] *Id.* § 404.1502, 404.1527(c)(2).

[20] Soc. Sec. Rul. No. 96–6p at *2.

nontreating sources are not assessed for controlling weight. Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[21] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[22]

In the present case, substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's residual functional capacity. The ALJ properly determined that Plaintiff could perform light work, and Plaintiff has failed to show that she is otherwise more limited.

Plaintiff argues that the ALJ should have assigned controlling weight to the opinion of her treating physician, Dr. Bethany Lawrence, expressed in a medical source statement form. Dr. Lawrence opined that Plaintiff was limited to lifting less than ten pounds, standing less than two hours per day, and sitting less than two hours per day; she could sit or stand for only ten minutes, and she would need to walk around every twenty minutes; she would need to lie down for an "unknown" amount of time; she could never stoop, crouch, or climb ladders, and she could only occasionally twist or climb stairs; and her ability to reach and push/pull would be affected by her impairment.[23] When asked for medical evidence supporting her opinion, Dr. Lawrence wrote that Plaintiff had "chronic low back pain."[24]

---

[21] 20 C.F.R. § 404.1527(c).

[22] *See* 20 C.F.R. § 404.1527(e)(2)(i).

[23] R. 630.

[24] R. 629 - 30.

The ALJ acknowledged that Dr. Lawrence was a treating physician but pointed out that Dr. Lawrence's opinion was more extreme than could be justified based on the objective medical evidence or Dr. Lawrence's own treatment notes. Dr. Lawrence's treatment notes consistently showed that Plaintiff had full and normal strength, which conflicted with the lifting limitation. When Dr. Lawrence mentioned strength in her notes, she generally noted only that it was normal.[25] The medical source statement form offers no details as to why Dr. Lawrence opined that Plaintiff's strength was limited, and there is no supporting evidence in the record.

Dr. Lawrence opined that Plaintiff could only sit for ten minutes at a time, but, as the ALJ noted, Plaintiff sat for thirty-nine minutes during her hearing. The ALJ also pointed out that, if Plaintiff were really as limited Dr. Lawrence had claimed, she would have needed more intense care than the treatment her doctors recommended. Modest treatment is "inconsistent with a finding of total disability."[26]

Additionally, the ALJ could properly find that Plaintiff's daily activities were in conflict with the limitations opined by Dr. Lawrence. Plaintiff testified that she did laundry and cleaning for her four children although she sometimes had help.[27] The ALJ may consider daily activities as a factor in the evaluation of subjective complaints.[28]

---

[25] R. 396, 407, 474 -76.

[26] *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *see also Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (a "conservative approach suggests the absence of a disabling condition.").

[27] R. 44.

[28] See *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("The ALJ also properly took into account Moore's daily activities, which included caring for two school-aged children and performing household chores.").

8

Although the ALJ did not assign Dr. Lawrence's opinion controlling weight, the ALJ did assign it some weight. The ALJ included a sit/stand option and limited Plaintiff's ability to push and pull based on Dr. Lawrence's opinion. Even when not entitled to controlling weight, an opinion by a treating source may be given some weight, as the ALJ did in this case.[29]

The ALJ assigned the opinion of consultative examiner Leonard Hayden, M.D., great weight. Dr. Hayden observed that Plaintiff could walk without an assistive device, had normal lower extremity strength and satisfactory range of motion in her lower extremities, and had normal upper extremity strength and range of motion.[30] He opined that Plaintiff could frequently lift and carry up to ten pounds and could occasionally lift and carry up to twenty pounds; she could work full-time, with standing/walking for a total of six hours and could be sitting and working during the other two hours; she could use her hands to reach frequently; she could use both hands to finger, feel, push, and pull; she could not tolerate the operation of the left foot; she could climb stairs and ramps occasionally, but should not climb ladders or scaffolds; she could perform frequent balancing, stooping, and crouching and could kneel and crouch occasionally; and she could work around moving mechanical parts on occasion and could operate a motor vehicle on a frequent basis but would not likely do well trying to work in an environment with pulmonary irritants, extreme cold, or extreme heat.[31]

---

[29] *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n. 4 (6th Cir. 2009) ("Furthermore, although the ALJ did not give Dr. Boyd's opinion controlling weight, the ALJ's residual functional capacity finding did incorporate the limitations that were consistent with the other evidence of record, including the findings of Poe's other treating physicians.").

[30] R. 507-08.

[31] R. 508-09.

Plaintiff argues that the ALJ overlooked the portion of Dr. Hayden's opinion in which he opined that she would need frequent unscheduled breaks in order to work a full day. Dr. Hayden's actual comments were that Plaintiff "could be working [an] eight-hour day," with "standing and walking for a total of six hours" and "sitting and working as well as taking [breaks] during the other two hours."[32] Dr. Hayden opinion is consistent with the Commissioner's policy that a person should be able to work full time with normal breaks.[33] Because the ALJ accurately summarized Dr. Hayden's opinion, the Court finds no error.

Next, Plaintiff argues the ALJ should have found her disabled at step three, pursuant to the listing for disorders of the spine, 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The listing of impairments is a list of diagnostic criteria, which if met, will halt the sequential evaluation with a finding of disability at the third step of the sequential evaluation process.[34] The claimant bears the burden of showing that her impairments meet or equal a listed impairment.[35]

To equal listing § 1.04, Plaintiff would have to show that she has a qualifying spinal injury, which can include "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture;" the injury must

---

[32] R. 508.

[33] *See* e.g., 20 C.F.R. §§ 404.1567(b); 416.967(b) (2013) (light work involves a "good deal" of standing and walking); Social Security Ruling 83-10 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

[34] *See* 20 C.F.R § 404.1520(a)(4)(iii). *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) ("The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." (internal citation omitted)).

[35] *See* 20 C.F.R. § 416.920(a)(4)(iii); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

result in "compromise of a nerve root . . . or the spinal cord."[36] The claimant must then prove that she meets each requirement in a lengthy list of accompanying functional restrictions from one of three categories. To meet section A, Plaintiff has to show limitation of motion in the spine, atrophy/muscle weakness, sensory/reflex loss, and positive straight leg raising both sitting and supine.[37] Section B requires "spinal arachnoiditis."[38] Section C requires Plaintiff to show that she has stenosis resulting in an inability to "ambulate effectively."[39]

An inability to ambulate effectively is an "extreme" limitation, such as a claimant who requires a walker or two canes, cannot perform normal activities such as going to the bank or using public transportation, or cannot maintain a "reasonable pace" while walking one block on "uneven surfaces."[40] Other examples include the inability to carry out routine walking needed for daily living, like shopping and banking, or climbing a few steps at a reasonable pace with use of a single hand rail.[41]

Plaintiff complains that the ALJ omitted any reference to qualifying nerve root compression at L5-S1, pointing to MRI scans that describe nerve root impingement.[42] The ALJ acknowledged that some of Plaintiff's MRI scans showed nerve root compression but relied, in

---

[36] 20 C.F.R pt. 404, subpt. P, app. 1, § 1.04.

[37] *See* 20 C.F.R pt. 404, subpt. P, app. 1, § 1.04A.

[38] *Id.* at § 1.04B.

[39] *Id.* at § 1.04C.

[40] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b).

[41] *Id.*

[42] R. 270, 374.

11

part, on the conclusion of Khan W. Li, M.D., a neurosurgeon, that Plaintiff did not need surgery because her impairments could be controlled conservatively.[43]

Even if she has a qualifying injury, Plaintiff has failed to prove that she has the resulting limitations described by the listing. She has not shown that she has the loss of range of motion, atrophy, positive straight leg raising (sitting and supine), and loss in reflexes all at the same time required to meet listing § 1.04A. Plaintiff's neurological examinations were fairly normal. Meredith Weeks, F.N.P., reported that Plaintiff had normal gait, normal flexibility, normal motor functioning, and negative straight leg raise.[44] Plaintiff failed to follow-up with her doctors' recommendations to attend physical therapy, and she told F.N.P. Weeks that she only had pain in her lower back, not her legs, indicating that her condition did not reach the disabling levels contemplated by the listings.[45]

Dr. Li examined Plaintiff and noted that the only abnormality was some difficulty bearing weight on her left leg, with no mention of any problem with strength, straight leg raising, or the other listed requirements.[46] Reports from Dr. Lawrence consistently showed that Plaintiff had normal sensation, reflexes, coordination, gait, and muscle strength/tone.[47]

Plaintiff has pointed to nothing in the record to show that she meets each of the functional restrictions, although she has cited evidence showing that she occasionally met some of the

---

[43] R. 364-65.

[44] R. 250.

[45] R. 252.

[46] R. 365.

[47] R. 389-407, 592- 627.

requirements. Therefore, Plaintiff has failed to meet her burden to show that she meets listing 1.04.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile. The Commissioner may carry this burden by applying the Grids[48] which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[49] However, if a claimant suffers from a limitation not accounted for by the Grids, the Commissioner may use the Grids as a framework but must rely on other evidence to carry her burden. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[50]

Here, the ALJ found that Plaintiff suffered from limitations beyond those accounted for by the Grids, and, therefore, used the Grids merely as a framework in determining whether Plaintiff could perform other work. The ALJ then relied on the testimony of a vocational expert in determining that there was a significant number of jobs in the national economy that Plaintiff could perform. This testimony provides substantial evidence to support the ALJ's finding that

---

[48] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[49] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[50] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

Plaintiff is not disabled.[51]  Accordingly, substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

    **IT IS SO ORDERED.**

                                               **s/ S. Thomas Anderson**
                                               S. THOMAS ANDERSON
                                               CHIEF UNITED STATES DISTRICT JUDGE

                                               Date:    July 10, 2017.

---

[51] *See Foster*, 279 F.3d at 356-57 (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question).